FILED _____ ENTERED
LODGED _____ RECEIVED

SEP 2 5 2017

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
                    DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DR. BRADLEY BARNETT :
:
v. : Civil No. JFM-17-1332
:
SUREFIRE MEDICAL, INC., et al.; :
:

## MEMORANDUM

Plaintiff, Dr. Bradley Barnett, has sued Defendants Surefire Medical, Inc. ("Surefire") and Dr. Aravind Arepally (collectively, "Defendants") for damages arising out of the design of an anti-reflux catheter. Plaintiff has asserted claims for "correction of inventorship" on six different patents, along with one claim of unjust enrichment against Dr. Arepally. Defendants have filed a motion to dismiss the Complaint or, in the alternative, for transfer, citing a lack of personal jurisdiction in Maryland. [ECF No. 11]. The issues have been fully briefed, [ECF Nos. 14, 15], and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' motion to dismiss will be granted, and the case will be dismissed without prejudice.

## BACKGROUND

The following facts are derived from the substantive declarations Defendants submitted in opposition to this motion. Surefire, a company that develops and sells cancer treatment systems, was incorporated in Delaware and maintains its principal place of business in Westminster, Colorado. Chomas Aug. 3, 2017 Decl., [ECF No. 11-3 at ¶¶ 2, 3]. Surefire sells its products throughout the United States, including Maryland, and also sells its products internationally to customers in thirteen different countries. *Id.* ¶ 4. Surefire does not have an office in Maryland, does not own or rent property in Maryland, and does not maintain a bank

account in Maryland. *Id.* ¶ 7. Surefire has never done business, in Maryland or elsewhere, with Plaintiff. *Id.* ¶ 10. Surefire conducted the research supporting its technology at its place of business in Colorado, and is not conducting clinical trials in Maryland for technology development. Chomas Aug. 30, 2017 Decl., [ECF No. 15-2 at ¶¶ 2, 3, 4]. In the past five years, Maryland has accounted for between 2% to 4% of Surefire's total sales. Chomas Aug. 3, 2017 Decl., [ECF No. 11-3 at ¶ 5]. One of Surefire's 43 employees lives in Maryland and is responsible for sales in the Mid-Atlantic region. *Id.* ¶ 6.

The other defendant, Dr. Arepally, is a resident of Georgia, and works at Piedmont Hospital in Atlanta. Arepally Aug. 4, 2017 Decl., [ECF No. 11-2 at ¶¶ 2, 3]. Dr. Arepally last resided in Maryland in 2008, before he co-founded Surefire in 2009. *Id.* ¶ 2, 5. The earliest patent application at issue in this case was filed on December 2, 2009. *Id.* ¶ 6. Dr. Arepally did not perform work in Maryland on the patented technology referred to in the Complaint. *Id.* ¶ 7. The technology at issue was conceived and reduced to practice after Dr. Arepally left Maryland. Arepally Aug. 31, 2017 Decl., [ECF No. 15-1 at ¶ 4]. Dr. Arepally owns a vacation home in Maryland, which he visits occasionally, but he has no other property or bank accounts in Maryland. Arepally Aug. 4, 2017 Decl., [ECF No. 11-2 at ¶ 10]. He does not transact business in Maryland, although he serves as an unpaid investigator in a multi-center trial being performed, in part, at the Johns Hopkins Medical Institute ("JHMI") in Maryland. *Id.* ¶ 9. That trial is unrelated to the technology mentioned in the Complaint. *Id.*; Arepally Aug. 31, 2017 Decl., [ECF No. 15-1 at ¶ 5]. Dr. Arepally also serves as an unpaid consultant to another trial being conducted at JHMI for a medical treatment incorporating the Surefire Medical Infusion System, which uses the disputed technology. *Id.* ¶ 6.

2

## LEGAL STANDARD

Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(2) challenges this Court's personal jurisdiction over them. The parties agree that, because this is a patent-related case, jurisdiction is governed by Federal Circuit law. *See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002). "[W]hen, as here, the court addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *see also Electronics For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1349 (Fed. Cir. 2003). "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Electronics for Imaging, Inc.*, 340 F.3d at 1349 (citing *Deprenyl*, 297 F.3d at 1347; *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).

## ANALYSIS

Personal jurisdiction exists where either general jurisdiction or specific jurisdiction is established. *See LSI Indus. Inc. v. Hubbell Lighting Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

### A. GENERAL JURISDICTION

General jurisdiction is a fairly limited concept, since it only arises where "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [defendant] on causes of action arising from dealings entirely distinct from those activities." *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). "For an individual,

3

the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). In the context of a corporation, the paradigm bases for general jurisdiction are "the place of incorporation and principal place of business." *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 759 (2014). The *Daimler* court clarified that while those paradigms are not necessarily the only bases for general jurisdiction, it would be "unacceptably grasping" to approve the exercise of general jurisdiction wherever a corporation, "engages in a substantial, continuous, and systemic course of business." *Id.* at 761 (declining to find general jurisdiction lies in every state in which a corporate defendant has "sizeable" sales).

In this case, Dr. Arepally, the individual defendant, is not domiciled in Maryland. Surefire is not incorporated and does not have its principal place of business in Maryland. Even taken in the light most favorable to Plaintiff, his allegation that "upon information and belief, each Defendant regularly solicits and conducts business in Maryland" is not sufficient to justify general jurisdiction. As an individual, Dr. Arepally would not be subject to general jurisdiction in Maryland by virtue of his business ties. As to Surefire, under the *Daimler* and *Goodyear* cases, Surefire's nationwide sales, of which Maryland contributes between 2% to 4%, would be insufficient to render Maryland akin to a "home state" for general jurisdiction purposes. *See Daimler*, 134 S.C. at 761, 762 (noting that allowing general jurisdiction in every state with sizeable sales would be an "exorbitant exercise[] of all-purpose jurisdiction"); *Goodyear*, 564 U.S. at 929 (rejecting notion that "any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed.").

4

## B. SPECIFIC JURISDICTION

Turning to specific jurisdiction, the Federal Circuit has determined that an assertion of specific jurisdiction over an out-of-state defendant requires an assessment of whether the "forum state's long-arm statute permits service of process and whether [the] assertion of personal jurisdiction violates due process." *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985)). Under Maryland's long-arm statute, Plaintiff's lynchpin of specific jurisdiction is that his claims arise out of acts performed in Maryland. Here, Plaintiff has not presented a *prima facie* case that Defendants' actions in Maryland gave rise to his cause of action. Plaintiff cites the sections of the Maryland long-arm statute which provide for personal jurisdiction where a defendant "[t]ransacts any business or performs any character of work or service in the State" or "[h]as an interest in, uses, or possesses real property in the State." Pl. Opp. at 7 (citing Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(1) and (b)(5)) (West 2017). However, the preliminary provision of the long-arm statute states that "[i]f jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." Md. Code Ann. Cts. & Jud. Proc. § 6-103(a) (West 2017). Dr. Arepally's ownership of a vacation home in Maryland, Dr. Arepally's limited instances of volunteer work on trials, and Surefire's sales activity in the state are all unrelated to Plaintiff's patent-based claims.

The closest question is posed by the remaining provision of the long-arm statute, *Id.* § 6-103(b)(4), which allows jurisdiction to be exercised where a person:

> [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State

The language of Plaintiff's Complaint roughly tracks the language in that subsection:

5

> This Court has personal jurisdiction over Defendants Surefire and Arepally because their actions as alleged herein caused tortious injury to Barnett, a Maryland citizen, in Maryland, and because, upon information and belief, each Defendant regularly solicits and conducts business in Maryland. Additionally, the patents at issue involve devices and related technology that was conceived and developed by Barnett in Maryland while a student at JHMI.

Pl.'s Compl. [ECF No. 1 at ¶ 2]. Assuming, then, that Plaintiff intends to rely on § 6-103(b)(4), that provision "'require[s] greater contacts than those necessary to establish jurisdiction under [other subsections of Maryland's long-arm statute].'" *Congressional Bank v. Potomac Educ. Found., Inc.*, No. PWG-13-889, 2014 WL 347632 (D. Md. 2014) (quoting *Metro Reg'l Info. Sys.*, 888 F. Supp. 2d at 698). Where, as here, the alleged injury is unrelated to the business conducted in Maryland, the defendants' contacts with Maryland "'must be extensive, continuous, and systematic'" to invoke § 6-103(b)(4). *Congressional Bank*, 2014 WL 347632 at *8 (quoting *Tharp v. Colao*, No. WDQ-11-3202, 2012 WL 1999484, at *2 (D. Md. June 1, 2012).

Plaintiff's limited factual allegations, even taken in the light most favorable to Plaintiff, simply do not rise to that standard. In his opposition to the Motion to Dismiss, Plaintiff alleges: (1) that Surefire sells its devices in Maryland, has a sales agent in Maryland, and is registered to do business here, Pl. Opp. [ECF No. 14, 8]; (2) that Plaintiff did significant inventive activity at JHMI, *Id.* at 12; (3) that in 2013, Surefire announced that its infusion systems, incorporating the disputed technology, would be used in clinical trials at JHMI, with Dr. Arepally as a principal investigator pursuant to an NIH grant, *Id.* at 8, 11; and (4) that Dr. Arepally continued to collaborate with Plaintiff regarding other work after he moved to Georgia, *Id.* at 6.

First, Surefire's sales activities in Maryland do not rise to the level of "extensive, continuous, and systematic" contacts needed to trigger jurisdiction under § 6-103(b)(4). Because Maryland's long-arm statute is construed as coextensive with the limits of due process, *Beyond*

*Sys., Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15 (2005) (internal citations omitted), this Court must consider:

> (1) The extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the Plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). In a situation similar to this case, *Rossetti v. Esselte-Pendeflex Corp.*, 683 F. Supp. 532, 533 (D. Md. 1988), the Court declined to find jurisdiction where the corporate defendant's "only contacts with Maryland seem to consist of general advertising in trade journals, some of which have circulation in Maryland, and sales to persons in Maryland" of several millions of dollars per year, but about 1.7% of the corporation's sales totals. *Id.* at 533. Likewise, in *Jafarzadeh v. Feisee*, 776 A. 2d 1, 3-4 (Md. Ct. Spec. App. 2001), the Court interpreted § 6-103(b)(4) to bar jurisdiction where the defendant, a Virginia physician, was licensed to practice in Maryland, advertised in a publication in Maryland, and received Maryland Medicaid payments, in a minimal amount, over two years. *Id.* Both of those circumstances, in the absence of any connection between the Maryland contacts and the plaintiff's claims, were deemed insufficient to confer jurisdiction under § 6-103(b)(4). Likewise, here, Surefire's contacts with Maryland are continuous, in light of its modest sales and the presence of a single sales associate with regional responsibilities, but cannot be fairly described as either "extensive" or "systematic." Accordingly, traditional notions of fair play and substantial justice preclude the exercise of personal jurisdiction over Surefire.

Second, Plaintiff's allegations about his physical location during the inception of the design do not confer jurisdiction, since they have no bearing on Defendants' whereabouts during the acts causing the tortious injury. First, the fact that Plaintiff engaged in significant inventive

activity in Maryland does not mean that his conduct can establish personal jurisdiction over Defendants. *See, e.g., Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the Plaintiff (or third parties) and the forum State."). Second, Defendant's alleged tortious conduct was the submission of patent applications without naming Plaintiff as an inventor. Dr. Arepally's location when he first learned of Plaintiff's design is irrelevant, since learning about the design did not cause tortious injury to Plaintiff.[1] Additionally, Dr. Arepally's alleged involvement with Plaintiff in developing the technology in Maryland is also irrelevant, since the alleged tort is the subsequent failure to include Plaintiff as an inventor.

Third, the trial at JHMI involving Surefire's technology does not reflect "extensive, continuous, and systematic" contacts by the Defendants with the state of Maryland. The only evidence offered by Plaintiff to establish personal jurisdiction consists of an affidavit from Plaintiff's counsel, Cecil E. Key, attaching printouts from various websites. [ECF No. 14-1]. Taken in the light most favorable to Plaintiff, those websites indicate that the Surefire device will be used in the JHMI study, and that Dr. Arepally, at "Piedmont Healthcare," will serve as a "Principal Investigator." Key Aff. [ECF No. 14, Exh.1-3]. In response, James Chomas, the President and Chief Executive Officer of Surefire, submitted an affidavit explaining that JHMI's clinical trial is testing treatment methods which incorporate Surefire's device, and the trial is not being used to develop Surefire products or technology. Chomas Aug. 30, 2017 Decl., [ECF No. 15-2 at ¶¶ 2, 3]. Also, Dr. Arepally submitted an affidavit establishing that his only role in the trial is that of an unpaid consultant. Arepally Aug. 31, 2017 Decl., [ECF No. 15-1 at ¶ 6]. Given

---

[1] Plaintiff also alleges that he has contract rights under guidelines promulgated by JHMI and the Howard Hughes Medical Institute. Compl. ¶ 20; Pl. Opp. at 9-10. In the absence of a breach of contract claim or any further factual information regarding the alleged contract rights, Plaintiff has not provided enough information to establish a *prima facie* case for jurisdiction.

the competent evidence supplied by Defendants to explain the website's contents, those contents are not sufficient to meet Plaintiff's burden to establish a *prima facie* case.

Finally, Dr. Arepally's collaboration with Plaintiff on other work after his relocation to Georgia does not constitute the type of "extensive, continuous and systematic" contacts to justify jurisdiction under § 6-103(b)(4). The evidence reflects that the work involved Mr. Barnett's thesis, plus a single article, and that the limited collaboration ended in 2010. Arepally Aug. 4, 2017 Decl., [ECF No. 11-2, at ¶ 8].

Ultimately, in the absence of any competent evidence, presented by way of sworn declaration or affidavit, to corroborate the bare assertion that each defendant "regularly solicits and conducts business in Maryland," Plaintiff's allegations are insufficient to establish a *prima facie* case of personal jurisdiction. Therefore, the Court will not exercise personal jurisdiction over Defendants, and will dismiss the Complaint, without prejudice to Plaintiff refiling his claims in Colorado or another appropriate venue. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").[2]

---

[2] Plaintiff's opposition to Defendant's alternative motion to transfer venue to the District of Colorado simply opposes the transfer on the grounds that, in Plaintiff's view, venue is appropriate in Maryland. Pl. Opp. [ECF No. 14 at 14-16]. Plaintiff did not address whether transfer would be preferable to dismissal. *Id.* Thus, this Court is unable to weigh whether the interest of justice requires transfer, without having information about any deleterious effects of dismissal (for example, whether the statute of limitations would bar refiling any of Plaintiff's claims) or whether Plaintiff desires to proceed with his case in Colorado. Plaintiff does make an alternative request for jurisdictional discovery if his current showing is lacking. *See id.* at 11 n.2. "We review the district court's denial of discovery, an issue not unique to patent law, for abuse of discretion, applying the law of the regional circuit." *Autogenomics Inc. v. Oxford Gene Tech. Ltd.* 566 F.3d 1012, 1021–22 (Fed. Cir. 2009). However, for the reasons described above, Plaintiff's cursory allegations, without any competent evidence, do not even establish a viable basis on which to order discovery. A court can deny jurisdictional discovery where, as here, a plaintiff offers only speculation or conclusory assertions about a defendant's contacts with a forum state. *See McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983) (holding that district court did not abuse its discretion in denying jurisdictional discovery where defendants submitted affidavits and, in contrast, plaintiff "offered

Dated: _September 25, 2012_                                       /s/ J. Frederick Motz
                                                                  J. Frederick Motz
                                                                  United States District Judge

---

nothing beyond his bare allegations that the defendants had had significant contacts with the state of Maryland" (internal quotation marks omitted)); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.* 293 F.3d 707, 716 n.3 (4th Cir. 2002) (affirming district court's denial of jurisdictional discovery where the request rested on "conclusory assertions").

10